# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARIA HANCOCK,

    Plaintiff,

vs.                                                    No. CIV 97-0084 MV/WWD

KENNETH S. APFEL,[1]
Commissioner of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon plaintiff's Motion to Reverse and Remand for a Rehearing, filed October 14, 1997[10-1]. The Commissioner denied plaintiff's request for Social Security Disability Insurance benefits and Supplemental Security Income benefits. Ms. Hancock, age 49, alleges a disability which commenced November 1, 1992 due to chronic pain syndrome in the cervical spine with headaches, sleep disturbance and psychological difficulties. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied plaintiff's applications, relying on the grids to conclude that plaintiff was not disabled and had the residual functional capacity to perform sedentary to light work with certain limitations. The Appeals Council denied Ms. Hancock's request for review of the ALJ's decision,

---

[1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted for John J. Callahan, Acting Commissioner of Social Security, who was the appropriate party at the time of the underlying decision. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g). Plaintiff has a GED and has worked in the past as a retail department manager and cashier-sales person.

2. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. <u>Id.</u> (citation omitted).

3. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred in concluding that plaintiff was without a justifiable reason for being noncompliant with her medication, and also in assuming that compliance with medication would render her capable of sustaining substantial gainful activity, and (2) the ALJ erred in denying Ms. Hancock due process by failing to give her the opportunity to cross examine the vocational expert who rendered an opinion based on interrogatories submitted by the ALJ after the hearing. In addition, the ALJ erred in failing to give proper weight to the opinions of Mr. Gaither, a vocational expert who evaluated Ms. Hancock.

4. Ms. Hancock sustained an injury to her lower back while working at Wal-Mart in November 1991. <u>Tr. at 233</u>. She was eventually released for light duty work, but just as she was recovering from this injury, and before she returned to work, she was involved in a car accident in October 1992 which re-injured her neck. <u>Tr. at 206, 227</u>. Following the accident, plaintiff complained of constant headaches and cervical pain which reached to her shoulders and mid-back. <u>Tr. at 204-05</u>.

2

5.  Plaintiff states she finds it difficult to perform household chores both because of the constant pain and from a "lack of motivation." Tr. at 56, 61, 211. In the past, she has lived with either her daughter or one of her four ex-husbands, for lack of anywhere else to go, and currently lives an ex-husband, with whom she does not get along. Tr. at 215-16. Ms. Hancock does the housecleaning at her own pace and goes to the laundromat on her own, Tr. at 211, and her ex-husband alternates cooking duties. Tr. at 218.

6.  Plaintiff listens to television or radio for about five hours a day, constantly changing positions, but cannot remember how often she does this. Tr. at 211, 236. She stated that she can walk a few blocks, but is always hurting. Tr. at 214. She can stand for about an hour, and not lift more than five pounds. Tr. at 215. She states that she cannot push a vacuum or lift her arms to reach a spice rack because of the pain. Tr. at 232. However she is able to fix her own hair. Tr. at 237.

7.  Ms. Hancock's "lack of motivation" or lack of energy is how she describes her depression, which has continued for two years. Tr. at 225. She attributes her depression to the realization that she has to live with constant pain which keeps her from being able to concentrate, which in turn prevents her from being able to work. Tr. at 225, 230. In addition, plaintiff stated that not being able to do those parts of work which she formerly enjoyed makes her depression even worse. Tr. at 235.[2] The record indicates that in May and June of 1964, Ms. Hancock was participating in some kind of retraining offered by the Division of Vocational Rehabilitation. Tr.

---

[2] Plaintiff also has a history of alcohol abuse, for which she was hospitalized around 1988. Tr. at 118, 225.

at 64 118. However, there is no documentation as to when the program ended, or whether plaintiff reached her goal in the program.

8. Ms. Hancock stated at the hearing that she takes all of her prescribed medications. The Paxil takes away "some, but not all" of her depression. Tr. at 236. She continues to take Darvocet which, along with cervical facet blocks given every 4 to 6 weeks by her treating physician Dr. Kelly, relieves her headaches, but not the cervical pain. Tr. at 220.[3]

**First Alleged Error**

9. Plaintiff contends that the ALJ erred in concluding that plaintiff was without a justifiable reason for being noncompliant with her medication, and also in assuming that compliance with medication would render her capable of sustaining substantial gainful activity. The ALJ recognized the existence of a mental impairment, but determined that it did not meet or equal a listed affective disorder (Pt. 404, App. 2, listing 12.04) and that Ms. Hancock had the residual functional capacity to perform certain work.

10. Early medical records from spring and fall of 1993 indicate that while Ms. Hancock was under the care of Dr. Wellborn, an attending physician, she was resistant to using any kind of medication to treat her depression because she did not think that either medications or doctors could help her. Tr. at 87. However, a review of the record does not support the ALJ's finding of noncompliance. First, plaintiff's reasons are not unjustified. She did not use prescribed medications for a time either because she felt that she could not afford it, Tr. at 91, because she felt she could take care of her depression herself, or because she felt that treatment was hopeless.

---

[3] The record states elsewhere that these injections were given every three to four months. Tr. at 114.

Tr. at 87. The latter perception is not unusual for those suffering from mental impairments, particularly depression. See Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989).

  11. Second, later medical treatment notes reflect that Ms. Hancock finally decided to use the prescribed medications. Tr. at 125, 118. While it is true that the ALJ considered her refusal to follow treatment as evidence of noncompliance, Tr. at 18-19, the ALJ nevertheless examined other evidence in the record before finally concluding that plaintiff's mental impairment did not preclude work. Thus, even though the ALJ was incorrect in finding plaintiff noncompliant, the error is *de minimis*, since the nondisability determination was not based solely on the finding that plaintiff was noncompliant, but rather based on other sufficient evidence considered by the ALJ in his decision.

  12. Plaintiff does not take issue with the residual functional capacity determination related to her physical impairment. Therefore, I see no need to refer to these records, e.g., treatment from Dr. Kelley for cortisone blocks, which afforded plaintiff considerable, although temporary, relief. Tr. at 133. 145, 148. Also, in the disability report which plaintiff filled out in October 1993, she stated that she was able to walk for two hours, sit for six hours, stand for three hours, and frequently lift weights up to fifty pounds Tr. at 56-58. She also reported that her headaches were "less frequent and less intense," but that her psychological condition had not improved. Tr. at 66.

  13. The mere fact that plaintiff was diagnosed as suffering from major depression does not automatically mean that she is disabled. See Bernal v. Bowen, 851 F.2d 297, 300 (10th Cir. 1988), cited in Andrade v. Sec'y of Health & Hum. Serv., 985 F.2d 1045, 1049-50 (10th Cir. 1993). Here, the ALJ followed special procedures required when a mental impairment exists, by

filling out a psychiatric review technique ("PRT") form and evaluating plaintiff's mental residual functional capacity in light of the medical evidence. Id., Tr. at 23.

  14. According to the PRT, the ALJ determined that Ms. Hancock had only slight or moderate functional limitations caused by her affective disorder which would not preclude sedentary and light work with some postural limitations.[4] The medical evidence bears out the ALJ's findings. Ms. Hancock reportedly obtained considerable relief from her symptoms in July 1993. Tr. at 124-25. By October, 1993, Dr. Wellborn felt that "overall she is finally making a lot of progress." Tr. at 89; see also Tr. at 87-101.

  15. A psychiatric evaluation conducted by Dr. Carlos Balcazar stated that Ms. Hancock's "main complaint" was pain, that she had a "strong histrionic component . . . [and] tended to react exaggeratedly." Tr. at 116; see Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983) (noting that consulting physician suspected plaintiff of exaggerating degree of numbness). Dr. Balcazar opined that plaintiff had some symptoms of anxiety "as well as some degree of depression and tends to get irritated very easily." Tr. at 116. However, he thought that she could perform "simple jobs" with repetitive tasks, and that her main handicap was "of a physical nature." Tr. at 117. In June 1994, a psychological assessment and evaluation at UNM Mental Health Center diagnosed plaintiff with "major depression." Plaintiff was reported to be taking Paxil "with good success." Tr. at 118.

  16. Plaintiff saw Dr. Fredman, a psychiatrist, in July 1994. Tr. at 119-122. He also diagnosed her with major depression and intended to follow a course of treatment using

---

  [4] Another PRT was performed by a psychologist in June 1994, finding only slight functional limitations as well. Tr. at 35-42.

psychotherapy and medication. Tr. at 121. Dr. Fredman felt that as long as plaintiff "suffers from chronic pain and depression," he doubted that she could work on "any kind of sustained, consistent basis." Tr. at 129. This last comment, however, does not necessarily conflict with the ALJ's findings, because although the doctor may give his medical opinion, only the Commissioner is responsible for examining medical source opinions and making the determination on whether claimant meets statutory definition of disability. See 20 C.F.R. § 404.1527(e)(1).

17.  I find that the ALJ's determination that plaintiff's mental residual functional capacity did not meet a medical listing which rendered her disabled was based on substantial evidence arrived at by following a legally correct inquiry. Although the evidence does not support the ALJ's finding that plaintiff unjustifiably did not comply with prescribed medical treatment, the error is minimal and as such, does not require reversal. See Diaz v. Sec'y of Health & Hum. Serv., 898 F.2d 774, 777 (10th Cir. 1990).

**Second Alleged Error**

18.  Ms. Hancock claims that the ALJ erred in denying Ms. Hancock due process by failing to give her the opportunity to cross examine Janet Toney, the vocational expert to whom the ALJ sent interrogatories *after* the hearing. In addition, plaintiff contends that the ALJ erred in failing to give proper weight to the opinions of Mr. Gaither, a vocational expert who evaluated Ms. Hancock.

19.  In her report, Ms. Toney stated that Ms. Hancock could perform a wide range of sedentary to light unskilled jobs and semi-skilled, based on her transferable skills. Tr. at 19, 169-70. Positions included jewelry preparer, billing clerk and general office clerk, of which over 3

million existed in the national economy and 102,00 existed in the regional economy. Id. Mr. Gaither's report differed markedly.

20. Mr. Gaither, a licensed rehabilitation consultant, notified Dr. Kelley by letter in June 1994, that he had become concerned about the "exacerbation of [plaintiff's] anxiety upon receiving a letter from Social Security Administration denying her benefits." Tr. at 175  He conducted an MMPI in June 1994, Tr. at 177, believing that results of the test would underscore his impression of plaintiff that she was "at risk" for a "devastating psychiatric collapse." Tr. at 175. Mr. Gaither stated that the MMPI profile shows an individual who "lacks ability to cope with the residual effects of her chronic pain and with the psychosocial complications associated with her medical condition." Tr. at 161.

21. Mr. Gaither's opinion in a September 1994 report, was that plaintiff's personality disorder restricted her social interactions and "precludes her from working with others." Tr. at 162. He interpreted the MMPI to demonstrate the existence of functional limitations which would satisfy the second prong of listing 12.04C, viz., deficiencies in social functions and in concentration, persistence and pace, thus rendering plaintiff automatically disabled. Id. Mr. Gaither went so far as to opine that Ms. Hancock was "totally disabled and unable to engage in substantial gainful activity," and that, although she had the residual functional capacity which placed her in the sedentary range, nevertheless she lacked "both the physical and mental capabilities to work a six hour day." Tr. at 161-62.

22.  Plaintiff argues that Ms.Toney ignored Mr. Gaither's September 1994 report and the findings of the MMPI, as interpreted by Mr. Gaither.[5]  The ALJ's decision did consider Mr. Gaither's report and test results, but did not attach much significance to them.  I find that the decision was nevertheless legally correct and based on substantial evidence, for several reasons.  Mr. Gaither's findings rode heavily on his interpretation of the MMPI, which in itself does not determine disability.  Cmp. Casias v. Sec. of Health & Hum. Serv., 933 F.2d 799, 802 n.3 (10th Cir. 1991) (MMPI to be used in conjunction with professional evaluation).[6]

23.  Also, the ALJ was entitled to accord more weight to the medical reports of specialists such as Dr. Balcazar.  See Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 289 (10th Cir. 1995); 20 C.F.R. §§ 404.1529(d)(5) & 416.927(d)(5)(1995) (specialist's opinions accorded more weight); see also 20 C.F.R. §§404.1513 & 416.913 (listing "acceptable sources" for medical opinions and allowing ALJ to use nonmedical sources to understand how impairment affects ability to work).

24.  For example, Mr. Gaither's findings regarding plaintiff's ability to concentrate were not consistent with those of Dr. Balcazar, a psychiatrist, who found that plaintiff's "attention span and capacity to concentrate" were "preserved."  Tr. at 116.  Also, while Mr. Gaither felt that Ms. Hancock was unable to perform any kind of work, Dr. Balcazar felt that she could perform certain

---

[5]  Mr. Gaither supplied plaintiff's counsel with two more letters, one following Janet Toney's report, and the other following the ALJ's unfavorable decision, in which he again emphasized plaintiff's inability to engage in any kind of work activity.  Tr. at 172, 191.

[6]  Although he is a rehabilitation counselor and "licensed mental health counselor," the record does not indicate that Mr. Gaither was qualified by training and experience to perform such an evaluation based on the administration of an MMPI.  See 20 C.F.R. Pt.404, Subpt.P, App.1, § 112.00(D).

limited tasks, acknowledging the need for limited social contact with co-workers. Tr. at 117 see Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir.1988) (part of ALJ's duty is to resolve conflicts in the record).

25. Thus, the ALJ was legally correct in according less weight to Mr. Gaither's opinion, in light of the other available evidence in the record. 20 C.F.R. § 404.1527(c) (ALJ weighs all the evidence in arriving at a determination about disability). Given that the ALJ found no significant limitation resulting from Ms. Hancock's mental impairment, according to the PRT which was performed, there was little relevance Mr. Gaither's reports would have in a hypothetical (in the form of interrogatories) posed to Ms. Toney. See Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1992) (hypothetical questions must accurately reflect mental and physical impairments that ALJ finds to exist). Significantly, Ms. Toney's report does appear to have considered plaintiff's need for "limited contact with co-workers or supervisors" in coming up with the list of jobs plaintiff could perform. Tr. at 170.

26. However, plaintiff's due process argument has merit. Plaintiff argues that counsel had the right to cross-examine Ms. Toney and submit supplementary information. The ALJ first gave plaintiff's counsel the opportunity within a 20-day time frame to submit more evidence or comment on Ms. Toney's responses to interrogatories in a letter dated August 25, 1995. Tr. at 156. Counsel timely replied to the ALJ that there were no objections to the interrogatories sent to Ms. Toney, but enclosed with the letter the MMPI results and Mr. Gaither's September report, and also requested an additional hearing to submit "additional input" from Mr. Gaither. Tr. at 160.

27.  Upon Ms. Toney's submission of her responses on October 11, 1995, Tr. at 169, the ALJ sent plaintiff's counsel another letter on October 20, 1995, allowing 20 days for a response. This response was forthcoming, again in a timely manner, on November 3, 1995, Tr. at 173, in which plaintiff's counsel stated that Ms. Toney's response did not take into account Ms. Hancock's nonexertional limitations from her mental impairment.  Because counsel did not specifically request an additional hearing in this second letter, defendant's contention is that the request for a hearing is untimely.

28.  However, taking into account counsel's earlier request for an additional hearing, as well as the Tenth Circuit's holding in Allison v. Heckler, 711 F.2d 145, 147 (10th Cir. 1983) (use of post-hearing medical report was a denial of due process where applicant not given opporutnity to cross-examine) which upholds plaintiff's right to cross-examine in this type of situation, the case should be remanded in order to allow plaintiff's counsel an opportunity to cross-examine Ms. Toney.[7]  See also Townley v. Heckler, 748 F.2d 109 (2d Cir. 1984) (denial of due process existed where there was no evidence that attorney's suggestions were ever forwarded to vocational expert, and where additional hearing was requested).

29.  Here, there was no opportunity for cross-examination of the expert upon whom the ALJ partially relied in making his determination, notwithstanding that plaintiff's counsel had initially requested an additional hearing.  Further, Ms. Toney's consideration of plaintiff's

---

[7] Several other circuits of the Court of Appeals have also held that an absolute right to cross-examination exists in the context of a social security case.  See Flatford v. Chater, 93 F.3d 1296, 1300 (6th Cir. 1996) (differing with the Tenth Circuit and majority of circuits in Allison and instead agreeing with the "minority of circuits" that an absolute right to cross-exam is not required, although acknowledging that a "heightened danger" of due process violation exists where evidence is gathered *post*-hearing).

limitations regarding social skills does not necessarily indicate whether plaintiff's additional evidence submitted in response to the ALJ's first letter was in fact offered as rebuttal evidence. Therefore, the judgment in this case should be reversed and remanded. Should the Commissioner wish to reopen the hearing and properly admit Ms. Toney's report, plaintiff's counsel must be given the opportunity for cross-examination, and to offer evidence in rebuttal.

### Recommendation

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [10-1] be granted and that this cause be remanded to the Commissioner for proceedings consistent with this opinion.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE